Filed 3/29/24  P. v. Torrez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C096858 |
| v. | (Super. Ct. No. 21FE013829) |
| MICHAEL RAY TORREZ, | |
| Defendant and Appellant. | |

Defendant Michael Ray Torrez and codefendant Sarah Hurt were tried together before the same jury, which found them guilty of possession of a firearm by a convicted felon, possession of methamphetamine for sale, and possession of methamphetamine while armed with a loaded and operable firearm.  Hurt is not a party to this appeal.

1

In a bifurcated proceeding, the trial court found that defendant Torrez was previously convicted of a serious felony offense qualifying as a strike within the meaning of the three strikes law. The trial court also found several aggravating circumstances to be true and thereafter sentenced defendant to serve eight years in state prison.

Defendant now contends (1) the trial court should have granted his motion to discharge appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) and should have held a second *Marsden* hearing during trial; (2) defense counsel was ineffective in failing to adequately advise defendant about the prosecution's plea offer; (3) the trial court improperly interfered with defendant's attempts to settle the case; (4) the trial court should have granted defendant's motion to represent himself under *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562] (*Faretta*); (5) the trial court erred in admitting other crimes evidence; (6) the prosecutor and Hurt's counsel committed misconduct during closing argument to the jury; (7) the trial court should not have told the jury that defendant was the only defendant it had ever removed from the courtroom; (8) cumulative prejudice requires reversal; and (9) the trial court committed sentencing errors.

We will affirm the judgment. Defendant has not established that the trial court abused its discretion in denying the *Marsden* motion, and the trial court was under no duty to hold a second *Marsden* hearing because there was no clear indication from defendant that he was seeking to renew his motion to discharge his appointed attorney. The record does not support defendant's related claims that defense counsel failed to adequately advise him regarding the prosecution's plea offer or that the trial court improperly interfered in defendant's attempts to settle the case. Defendant's *Faretta* claim lacks merit, as does his assertion of evidentiary error. His remaining contentions are forfeited or lack merit.

BACKGROUND

In August 2021, defendant and Hurt were involved in a dating relationship and sold drugs together. Defendant drove Hurt to a house where she previously lived so that she could pick up some of her belongings. Someone at the house called law enforcement and complained about her presence, prompting two Sacramento County Sheriff's deputies to respond to the house. When they arrived, defendant was sitting gun the driver's seat of a Ford Mustang parked in the driveway. He appeared to be nervous. One of the deputies engaged defendant in conversation while the other deputy went to the house to contact Hurt.

A short time later, the deputies lawfully detained both defendant and Hurt, after which the car was lawfully searched. A backpack was found on the front passenger side floorboard. Inside the backpack, along with various personal items belonging to Hurt, was a black Polymer80 "ghost gun"[1] with an "auto selector switch" allowing the gun to be fired in full-automatic mode. The gun was loaded and fully operational. The backpack also contained $1,400 in cash and a plastic bag containing about 84 grams of methamphetamine. The deputies additionally found two digital scales in the car's center console.

In a search of defendant, deputies found a room key for a Motel 6 in West Sacramento and $600 in cash. One of the deputies also looked through defendant's cell phone and found images of methamphetamine and assault rifles.

A detective with the West Sacramento Police Department arrived at the scene and confirmed that defendant was staying at the Motel 6. Defendant told the detective: "I didn't know, I didn't know she had a gun in her fuckin thing." The detective asked defendant: "So you're telling me that your DNA is not gonna pop on that gun at all?"

---

[1] A ghost gun is a firearm that can be ordered online as part of a kit, and that must be assembled and rendered operational by the buyer.

Defendant answered: "I don't know. It shouldn't. No, I'm just saying because I've touched it before. I brought it up and down the stairs before. But I've never fuckin, that is not my fuckin gun. I did not know she had that gun on her."

At some point, defendant and Hurt were left alone in the back of a patrol car. Their conversation was recorded. Hurt said to defendant: "You really put that shit in my backpack?" Defendant responded: "Shut up, shut up. Listen I didn't mean to. Okay?"

Further investigation into the contents of defendant's cell phone revealed a photo of a black Polymer80 gun with identical features to the gun found in the backpack. The photo was taken with defendant's cell phone five days before he was arrested in this case.

At trial, the prosecution also admitted evidence of uncharged crimes. After confirming defendant was staying at the Motel 6 in West Sacramento, officers searched the room and found, among other things, three plastic bags containing various amounts of methamphetamine, two plastic bags containing various amounts of suspected heroin and fentanyl, several different types of pills, three cell phones, two digital scales, and a firearm. Months earlier, in May 2021, a sheriff's deputy had lawfully detained defendant after he pulled into a motel parking lot. Defendant and the car he had driven were lawfully searched, and defendant had about $1,300 in cash on him. Inside the car was a plastic pill bottle containing three small bindles of heroin. The deputy also found two larger plastic bags, one containing methamphetamine and the other containing heroin.

A prosecution expert testified about common behaviors and common phrases used by drug dealers, and also about the content of text messages sent and received by defendant's cell phone that indicated he was engaged in selling drugs. For example, on August 10, two days before defendant was arrested in this case, the following text message was sent from defendant's phone: "I don't want to get you in trouble. I still got a gun and pound in the car." In response to hypothetical questions tracking the facts of this case, as well as the facts of the uncharged crimes evidence, the expert opined that the drugs possessed in the hypothetical scenarios were possessed for sale.

4

Defendant ultimately admitted, during his testimony at trial, that he was a drug dealer.  He admitted selling methamphetamine, heroin, and fentanyl during the day he was arrested, but claimed he ran out of product at some point before he drove Hurt to the house.  While he knew Hurt had a backpack, he never looked inside and did not know it contained a gun or methamphetamine until the sheriff's deputies searched the backpack.  Defendant further admitted taking the picture of the black Polymer80 gun that was found on his cell phone, but claimed the gun belonged to a friend who showed it to him.

The jury found defendant guilty of possession of a firearm by a convicted felon, possession of methamphetamine for sale, and possession of methamphetamine while armed with a loaded and operable firearm.  In a bifurcated proceeding, the trial court found that defendant had a prior strike conviction.  It sentenced him to eight years in prison.

Additional background is set forth in the discussion as relevant to the contentions on appeal.

DISCUSSION

I

Defendant contends the trial court prejudicially abused its discretion and violated his federal constitutional rights by denying his *Marsden* motion and failing to hold a second *Marsden* hearing during trial.

A

On May 31, 2022, the date set for trial to commence, defendant moved to discharge his appointed counsel.  During the hearing on the motion, defendant informed the trial court that the most important thing defense counsel failed to do was get defendant's postrelease community supervision (PRCS) hold lifted so that he could be released on bail.  After defense counsel explained that defendant did not have a PRCS hold, but was instead being held no-bail on one of his pending cases, defendant dropped the issue as a basis for the *Marsden* motion.  But defendant complained that defense

5

counsel had not provided him with any paperwork letting him know the charges he faced, counsel had not shared any strategy with him, and counsel was biased and judgmental. As defendant explained, the latter complaint stemmed from defendant believing he should be released from custody. Before trial that day, defendant asked defense counsel whether he was going to bring up the custody issue. According to defendant, defense counsel responded: " 'No. Fuck you. I'll see you upstairs.' " Defendant also stated, "this guy is sitting here just saying, 'Fuck you,' and laughing at me."

The trial court explained that it would need to hear from defense counsel before deciding whether or not counsel was representing defendant competently and asked whether there was anything else defendant wanted to say. Defendant responded: "Never mind, man." After some back-and-forth, the trial court indicated that it was listening to defendant's complaints. Defendant responded: "You heard what I said, but you already have an opinion that you're already doing. You already posted no bail. You're already going to give me to him. I already know that. Why did we even have this motion?" After further back-and-forth, the trial court heard from defense counsel.

Defense counsel acknowledged the contentious exchange that occurred between him and defendant before trial that day, saying "[e]verything he said is true, except he left the part out where he's standing, punching the window, dropping 'F' bombs, demanding that I get him out of jail today." Defense counsel then explained: "I think the problem [defendant] is having is that we can't get past him getting out. Every conversation I've had with him, he won't let me speak. He won't discuss the case. He only wants to talk about getting this hold, and I've tried to explain to him we have legal terms meaning specific things." It was at this point that defense counsel explained the custody issue in detail, explaining there was no PRCS hold, which appeared to be part of the confusion.

The trial court asked defense counsel to respond to defendant's complaint about not receiving any paperwork. Counsel responded: "So if he doesn't have it, I'll get it to him. We've discussed the case. He sat through his preliminary hearing. It's not that

6

complicated. It was a probation search, and they found a backpack. [¶] Judge, I've never been able to get past his interruptions. He refuses to talk about the case. He will only yell at me about getting him out and that he will not take any deals. He didn't do anything wrong. It's all Ms. Hurt's property." Asked whether he gave defendant the police reports, defense counsel answered: "You know, I don't know. It's my practice to do it in every single case. I don't know." Counsel then gave defendant a redacted copy of the police reports. Defendant responded: "Thank you. Here we are at trial." Defense counsel continued: "Judge, I can't get a word in edgewise. Every time I've seen him . . . I've generally walked out on him because he just does nothing but yell at me about getting the hold dropped. [¶] The trial is not that complicated. He sat through the prelim. We did talk last week about the case, about making counteroffers, that sort of thing, and he's – nothing ever out of his mouth except, 'Get me out,' and 'I will never take a deal. It's all her shit.' That's the only conversations I've ever had with him."

In response, defendant stated that he had no problem with the "hold thing" now that it was explained to him. He also acknowledged losing his temper over that issue, claiming that defense counsel never stated clearly about the hold. Defendant further claimed that defense counsel had only seen him three times in nine months for 60 seconds. Defense counsel disputed this assertion and chronicled his pretrial efforts on defendant's behalf, including an effort to resolve various pending cases by way of a universal deal, but defendant was not interested in making deals because his position was always that he did nothing wrong and wanted out of jail. Defendant disputed that he was not interested in making a deal and claimed that defense counsel told him not to take any deals. Referring to a pretrial plea offer that expired the previous week, defendant stated: "Four years sounds really good to me, but he says, 'Don't take a deal. I can win.' That's why. I don't know what else to say. He's not representing me right."

The trial court denied the *Marsden* motion.

7

B

"*Marsden* motions are subject to the following well-established rules. ' " 'When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations].' [Citations.]" ' [Citation.] Denials of *Marsden* motions are reviewed under an abuse of discretion standard. [Citation.] Denial 'is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel. [Citations.]' [Citation.]" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085 (*Barnett*).)

Here, the trial court gave both defendant and defense counsel ample opportunity to be heard on the *Marsden* motion. As relevant to the issues raised on appeal, defendant specifically complained about defense counsel's failure to provide him with paperwork and share strategy. Defendant also complained that defense counsel was biased and judgmental, citing the exchange before trial where both parties became heated and used profanity. Defense counsel responded to each complaint. Implicit in the trial court's denial of the *Marsden* motion was a conclusion that defendant did not clearly demonstrate defense counsel was providing or was likely to provide inadequate representation. Also implicit in the ruling was a conclusion defendant had not clearly shown that he and counsel had become embroiled in such an irreconcilable conflict that ineffective representation was likely to result.

While the record of the relationship and communication between defendant and defense counsel raises concerns, it does not establish an abuse of trial court discretion.

8

Defendant nevertheless argues the breakdown in communication, infrequent visits, and failure to provide defendant with discovery until directed by the trial court *required* a finding of irreconcilable conflict. Not so. The failure to get along with appointed counsel or the fact that there are heated exchanges between client and attorney does not require a substitution of counsel. (*People v. Jones* (2003) 29 Cal.4th 1229, 1246; *People v. Smith* (1993) 6 Cal.4th 684, 696-697 (*Smith*).) The allegation that defense counsel rarely visited defendant also does not justify substitution of counsel. (*People v. Myles* (2012) 53 Cal.4th 1181, 1208.) " '[T]he number of times one sees his attorney, and the way in which one relates with his attorney, does not sufficiently establish incompetence.' [Citation.]" (*People v. Streeter* (2012) 54 Cal.4th 205, 230.) "Moreover, a defendant may not force the substitution of counsel by manufacturing a conflict or a breakdown in the relationship through his own conduct." (*People v. Johnson* (2018) 6 Cal.5th 541, 574 (*Johnson*).)

Here, the trial court appears to have credited defense counsel's account of his interactions with defendant and impliedly found defendant was responsible for any lack of communication and breakdown in their relationship. After defendant interrupted and argued with the trial court several times during the hearing, the trial court stated: "[I]f your conversation with [defense counsel] is anything like your conversation with me, . . . [¶] . . . it makes it difficult for your lawyer to help you." After additional argument, the trial court reiterated: "It's difficult for me to work with you. Like I say, I expect you to give me an amount of respect, and you're walking right over that, and I can't work with you. So what do I expect [defense counsel] to be able to do?" The trial court is in the best position to resolve credibility questions between defendant and defense counsel and the trial court is entitled to accept counsel's explanation. (*Smith, supra*, 6 Cal.4th at p. 696.) Based on defense counsel's explanation, defendant repeatedly yelled and talked over him during their meetings, causing counsel to cut their conversations short because defendant refused to discuss the case. "A defendant cannot

take such steps and then rely on that same behavior to assert an irreconcilable conflict with counsel." (*Johnson, supra*, 6 Cal.5th at p. 574.)

Moreover, while the trial court expressly found that certain paperwork should have been provided to defendant earlier, it impliedly found that omission was not sufficient to discharge appointed counsel. This was not an abuse of discretion. As stated previously, in order for the trial court to discharge appointed counsel, the record must clearly establish either inadequate representation or an irreconcilable conflict. (*Barnett, supra*, 17 Cal.4th at p. 1085.) We have already addressed the latter ground. With respect to the former, defendant has not carried his appellate burden of demonstrating defense counsel's omission amounted to constitutionally inadequate representation.

Defendant further argues that the trial court should have granted the *Marsden* motion because defendant claimed he wanted to take the plea deal that was offered by the prosecution before trial, but defense counsel told him not to do so. This argument, spanning a mere four sentences in the opening brief, and not supported by any citations to relevant authority, is forfeited for failure to adequately brief the issue. (Cal. Rules of Court, rule 8.204(a)(1)(B);[2] *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*).) In any event, defense counsel explained that defendant was the one who refused to entertain any plea deals. The trial court was entitled to credit this explanation. (*Smith, supra*, 6 Cal.4th at p. 696.)

Defendant's final *Marsden*-related claim is that the trial court should have held a second *Marsden* hearing when it became clear mid-trial that counsel had still not given defendant all the discovery.

Defendant argues that during his testimony at trial, he was unfamiliar with evidence that would have been disclosed in discovery, specifically the contents of his cell

---

[2] Undesignated rule references are to the California Rules of Court.

phone and transcript of his conversation with Hurt in the back of the patrol car. For example, after defendant testified that he had been around firearms only twice between his June 2021 conviction and his arrest in this case, the prosecutor was allowed to impeach him with various pictures of firearms found on his cell phone. During this impeachment, defendant stated: "Look, I smoke a lot of meth. That's not an excuse. So I don't remember these photographs. That's why I said I would like my paperwork before I started trial. So, that way, I can refresh my memory." Later, when defendant was impeached with his conversation with Hurt, defendant asked: "How come I don't get a copy of the transcript? I only got to see it for a second. . . . This whole trial, I never got one paperwork." At another point in defendant's testimony, he stated: "You see why . . . I need my paperwork before trial?"

This claim fails because "[t]he trial court is not obliged to initiate a *Marsden* inquiry sua sponte. [Citation.] The court's duty to conduct the inquiry arises 'only when the defendant asserts directly or by implication that his counsel's performance has been so inadequate as to deny him his constitutional right to effective counsel.' [Citations.]" (*People v. Lara* (2001) 86 Cal.App.4th 139, 150-151.) Where there is no direct request, there must be "at least some clear indication by defendant that he wants a substitute attorney." (*People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8.) The foregoing references to defendant not receiving paperwork before trial would not have clearly indicated to the trial court that defendant was seeking to make a new *Marsden* motion. "A court would risk interfering with the attorney-client relationship if its responsibility to substitute counsel could be triggered by such a meager showing." (*Johnson, supra*, 6 Cal.5th at p. 574.)

II

Defendant next claims his trial counsel provided constitutionally deficient assistance by failing to adequately counsel him about the prosecution's pretrial plea offer.

11

A criminal defendant has the right to the assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) This right "entitles the defendant not to some bare assistance but rather to effective assistance. [Citations.] Specifically, it entitles [the defendant] to 'the reasonably competent assistance of an attorney acting as [a] diligent conscientious advocate.' [Citations.]" (*Ibid*., italics omitted.) The burden of proving a claim of ineffective assistance of counsel is squarely upon the defendant. (*People v. Camden* (1976) 16 Cal.3d 808, 816.) " 'In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because [the] "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, [the defendant] must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*In re Harris* (1993) 5 Cal.4th 813, 832-833, disapproved on another point in *Shalabi v. City of Fontana* (2021) 11 Cal.5th 842, 854-855 & fn. 5; see *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674].)

Defendant argues defense counsel's failure to provide him with discovery until directed by the trial court at trial, after the prosecution's pretrial plea offer of four years had expired, combined with counsel's assurance that he could win the case, caused defendant to reject the offer to his detriment.

Beginning with the first prong of the analysis, we assess defense counsel's performance using the following standards: "[D]efense counsel must communicate accurately to a defendant the terms of any offer made by the prosecution, and inform the defendant of the consequences of rejecting it, including the maximum and minimum sentences which may be imposed in the event of a conviction. [Citations.] We caution

12

that a defense attorney's simple misjudgment as to the strength of the prosecution's case, the chances of acquittal, or the sentence a defendant is likely to receive upon conviction, among other matters involving the exercise of counsel's judgment, will not, without more, give rise to a claim of ineffective assistance of counsel. [Citations.] Such claim 'depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.' [Citations.]" (*In re Alvernaz* (1992) 2 Cal.4th 924, 937, fn. omitted.)

Here, contrary to defendant's assertion in his opening brief, the record indicates that defense counsel informed him about the prosecution's offer. During the *Marsden* hearing, defendant confirmed that he knew the offer was four years, stating: "Four years sounds really good to me, but he says, 'Don't take a deal. I can win.' That's why." The record indicates defendant and his attorney discussed the plea offer the previous Thursday, which was the day before the offer expired. Defendant decided not to accept the deal, either because he claimed he was innocent and was not interested in making a deal, as defense counsel claimed at the *Marsden* hearing, or because defense counsel advised him that he could win the case, as defendant claimed. As mentioned previously, the trial court appears to have credited defense counsel's explanation of his interactions with defendant. We have no basis to conclude otherwise. Thus, while the record does not reveal the extent to which defense counsel and defendant discussed the consequences of not accepting the plea, the record supports a conclusion that the conversation was cut short by defendant yelling at counsel and demanding to be released from custody. Indeed, when addressing his failure to hand over the police report to defendant, defense counsel stated: "I suspect we never got that far in our meetings to deliver it to him."

On this record, we cannot conclude defense counsel's communication of the plea offer to defendant fell below an objective standard of reasonableness. Moreover, even if defendant's version of the conversation is credited, i.e., that defense counsel advised him

13

not to take the deal because he could win the case, simple misjudgment about the strength of the prosecution's case and likelihood of acquittal are not sufficient to establish deficient performance. (*In re Alvernaz, supra*, 2 Cal.4th at p. 937.)

Defendant's ineffective assistance claim also falters at the second prong of the analysis. In order to establish prejudice in these circumstances, defendant must show that but for the ineffective assistance of counsel there is a reasonable probability that he would have accepted the plea. (*Lafler v. Cooper* (2012) 566 U.S. 156, 164 [182 L.Ed.2d 398].) Here, there is no such probability. Defense counsel clearly stated that defendant repeatedly proclaimed his innocence and was not willing to take any deals offered by the prosecution. Defendant later confirmed that he did not take the deal that was offered to him because he was claiming innocence: "If I'm guilty I'm going to take it. The only reason we're here fighting it is because I'm not guilty." This evidence of defendant's unwillingness to take the plea defeats the showing of prejudice required for him to succeed on his ineffective assistance claim.

### III

Defendant further asserts that the trial court prejudicially erred and also violated his constitutional rights by interfering in his attempts to settle the case.

### A

On the second day of trial, defense counsel informed the trial court that defendant wanted to take the four-year plea deal that was previously offered by the prosecution. The trial court responded: "It's not on the table." Defendant asked: "Why not?" The trial court answered: "Because we're at trial and this is the end of the trail." Defendant stated: "But I never got told that one time. I got told it one time. That was it. And then he said, 'Don't take no deals. We can take it to trial.'" Defendant then said he wanted to represent himself and "take the four years." The trial court responded: "[E]arly resolution deals are early resolution deals. This is not an early resolution. This is not even the first day of trial. This is the second day of trial, and I'm not offering that."

14

Later in the trial, after his testimony concluded, defendant stated: "Man, I'm ready to end this. I'll take the whole case. I'm good. You give me six years right now, I'll take the whole case, the guns, everything. I'm good." Defendant then complained about his attorney's performance, some of which has been recounted *ante*, and twice offered to "take the deal." The trial court responded: "Mr. Torrez, we're not going to do it." Defendant said he was "going to do it," and added: "She's innocent. I'm taking it. We're wasting our time. Give me the eight years. I don't care." After the trial court explained to defendant that the case against Hurt would not be dismissed "just on [his] say-so," defendant resumed his complaints about defense counsel, offered to "lie" to the jury and say he put the gun in Hurt's backpack, and added: "I'll take it. You get your conviction, because I know you want to convict me." Defendant then repeatedly proclaimed his innocence and said the only reason he decided to go to trial, rather than take a deal earlier, was because he was not guilty. Then, inconsistently, defendant claimed he did not know "there was a four-year deal" and claimed he "would have took that."

B

In support of his assertion of improper judicial interference in plea negotiations, defendant relies on the following observations from *People v. Weaver* (2004) 118 Cal.App.4th 131 and *People v. Williams* (1969) 269 Cal.App.2d 879: "There is no rule in California forbidding judicial involvement in plea negotiations. Nonetheless courts have expressed strong reservation about the practice. In [*People v. Williams*], the court stated that 'special problems are presented when the judge participates in plea negotiations. Experience suggests that such judicial activity risks more, in terms of unintentional coercion of defendants, than it gains in promoting understanding and voluntary pleas, and thus most authorities recommend that it be kept to a minimum [citations].' [Citations.]" (*Weaver,* at p. 148, italics omitted.) Such reliance is misplaced. These cases involved defendants who entered into pleas as a result of coercive advice offered by the trial court.

In each case, the appellate court reversed and remanded the matter to allow the defendant to withdraw his plea. (*Id*. at pp. 149-150; *Williams,* at pp. 885-886.)

Here, there was no judicial involvement in the plea negotiations at all, let alone improper involvement, because those negotiations concluded before the trial court made the comments defendant claims were improper. Nevertheless, defendant argues the trial court "curtail[ed]" plea negotiations. Not so. Negotiations had already ended. Defendant declined to accept the plea offered by the prosecution. He later changed his mind, at which point the trial court accurately informed defendant that the offer he wished to accept was no longer on the table. Defendant highlights the trial court's statement, "I'm not offering that," suggesting the trial court was holding itself out as a participant in the negotiating process. We are of the opposite view. The trial court informed defendant it was not willing to participate in negotiations by reopening an offer that had already expired. If the prosecution wished to reopen the offer, it could have done so. It did not. The trial court also did not overstep when responding to defendant's statements after his testimony. It simply informed defendant that he could not unilaterally make and accept a plea offer. Again, if the prosecution wished to renew the four-year offer at that point in the trial, or make a new six-year or eight-year offer, as defendant suggested, the prosecution could have done so. It did not. There was no interference by the trial court.

## IV

Defendant additionally contends the trial court prejudicially abused its discretion and violated his constitutional rights by denying his *Faretta* motion.

## A

After the trial court denied defendant's *Marsden* motion, and prior to jury selection on the first day of trial, defendant asked to represent himself. The trial court responded: "I'm not going to let you do that." When defendant asked the trial court for a reason, the trial court answered: "Because you're acting out of spite right now.

16

You're acting out of anger. I'm just telling you that you are. I'm making a finding you are because you are unhappy with the way this is going, and so you want to derail this." After defendant denied wanting to derail the trial, the trial court explained: "I'm making a finding that you do. You do have a right to represent yourself, but not at this point in a trial, when it's going to disrupt the proceedings." Defendant again denied trying to disrupt the trial and added: "I'm fully aware of everything. I'm not taking it out irrationally. I'm not mad. I'm not irritated. I'd like to represent myself." The trial court responded: "I'm making a ruling you may not." In response to further argument from defendant, the trial court stated: "I explained it to you. I will once more and then no more. It's going to disrupt the proceedings in this case if you get rid of your attorney and represent yourself at this point. You're not prepared to represent yourself, and I'm making a finding that you may not."

B

Where a criminal defendant asserts the constitutional right of self-representation "within a reasonable time prior to the commencement of trial," the trial court must allow the defendant to do so "upon ascertaining that [he or she] has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be." (*People v. Windham* (1977) 19 Cal.3d 121, 127-128 (*Windham*).) However, " 'the right of self-representation is not absolute.' [Citations.]" (*People v. Lynch* (2010) 50 Cal.4th 693, 721 (*Lynch*), abrogated on another point in *People v. McKinnon* (2011) 52 Cal.4th 610, 637-644.) " '[O]nce a defendant has chosen to proceed to trial represented by counsel,' a defendant's motion for self-representation is 'addressed to the sound discretion of the court.' [Citation.]" (*Lynch,* at p. 722.) Such a motion may be denied "if untimely" or if "the motion is made for purpose of delay." (*Ibid*.)

The California Supreme Court has "held on numerous occasions that *Faretta* motions made on the eve of trial are untimely." (*Lynch, supra*, 50 Cal.4th at p. 722.) For example, in *People v. Valdez* (2004) 32 Cal.4th 73, the court held a *Faretta* motion

17

made "moments before jury selection was set to begin" was untimely. (*Id*. at p. 102.) That is the situation here. Thus, "defendant has the burden of justifying the delay." (*People v. Horton* (1995) 11 Cal.4th 1068, 1110.) He has not done so. Indeed, this case is similar to *Horton*, where the trial court denied an untimely *Faretta* motion, made on the day set for trial to begin, after the trial court denied the defendant's *Marsden* motion. (*Ibid*.) In denying both motions, "the trial court found that defendant's actions demonstrated an attempt to manipulate the judicial process, to obstruct his prosecution, and to delay the trial." (*Ibid*.) That was also the reasoning of the trial court in this case. As in *Horton*, we conclude this "constituted a proper exercise of the trial court's discretion." (*Ibid*.)

We also reject defendant's assertion that the trial court failed to consider certain required factors in ruling on his *Faretta* motion. In making this argument, defendant relies on the following passage in *Windham, supra*, 19 Cal.3d 121: "Among other factors to be considered by the court in assessing such requests made after the commencement of trial are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion. Having established a record based on such relevant considerations, the court should then exercise its discretion and rule on the defendant's request." (*Id*. at pp. 128-129.) While the trial court did not specifically delineate these factors in ruling on defendant's motion, its reasoning provides sufficient justification for the ruling. (See *People v. Scott* (2001) 91 Cal.App.4th 1197, 1206; *People v. Perez* (1992) 4 Cal.App.4th 893, 904-905.)

V

Defendant claims the trial court prejudicially abused its discretion and further violated his constitutional rights by allowing the admission of other crimes evidence.

18

"As a general rule, evidence the defendant has committed crimes other than those for which he [or she] is on trial is inadmissible to prove bad character, predisposition to criminality, or the defendant's conduct on a specific occasion. [Citation.] However, Evidence Code section 1101, subdivision (b), permits evidence of a defendant's past criminal acts when relevant to prove a material fact at issue, such as identity, motive, or knowledge. [Citation.] In prosecutions for drug offenses, evidence of prior drug use and prior drug convictions is generally admissible under Evidence Code section 1101, subdivision (b), to establish that the drugs were possessed for sale rather than for personal use and to prove knowledge of the narcotic nature of the drugs." (*People v. Williams* (2009) 170 Cal.App.4th 587, 607.)

Here, the trial court allowed the prosecution to introduce evidence of the drugs, firearm, and other indicia of drug sales found at the Motel 6 following defendant's arrest. The trial court also allowed the prosecution to introduce evidence related to defendant's June 2021 conviction for possession of narcotics for purposes of sale. Those incidents were relevant to establishing defendant's knowledge of the presence and prohibited nature of the methamphetamine and firearm in Hurt's backpack, as well as his motive and intent to possess the methamphetamine for sale. (*People v. Williams, supra*, 170 Cal.App.4th at p. 607; *People v. Pijal* (1973) 33 Cal.App.3d 682, 691 (*Pijal*).)

Moreover, the probative value of the evidence for such purposes was not substantially outweighed by the evidence's prejudicial effect, or any of the other counterweights found in Evidence Code section 352. The challenged evidence was no more inflammatory than the circumstances of the charged crimes. (See *People v. Eubanks* (2011) 53 Cal.4th 110, 144.) The trial court also properly instructed the jury that the evidence was to be considered for the limited purpose of deciding whether defendant intended to possess the methamphetamine for the purpose of sale and knew about the presence of the firearm in Hurt's backpack, further mitigating the possibility

of any undue prejudice. (*People v. Lewis* (2001) 25 Cal.4th 610, 637; *Pijal, supra*, 33 Cal.App.3d at p. 691.)

VI

In addition, defendant contends the prosecutor and Hurt's counsel committed prejudicial misconduct during argument to the jury. Specifically, defendant claims it was misconduct to argue that defendant's demeanor in the courtroom and his outbursts during trial indicated he was accustomed to getting his way and wanted Hurt to take the blame for his actions. Defendant further claims it was misconduct for Hurt's counsel to argue, with respect to a kidnapping arrest that was admitted for impeachment purposes, that the kidnapping case was dismissed because it was filed in the wrong venue.

A

Defendant's misconduct contentions are forfeited because he did not object to the purported misconduct or request a curative admonition. (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1328 (*Seumanu*).) "The primary purpose of the requirement that a defendant object at trial to argument constituting prosecutorial misconduct is to give the trial court an opportunity, through admonition of the jury, to correct any error and mitigate any prejudice." (*People v. Williams* (1997) 16 Cal.4th 153, 254.) The same standards applicable to claims of prosecutorial misconduct also apply to claims of misconduct by a codefendant's attorney in a multiple defendant criminal trial. (See *People v. Thomas* (2021) 64 Cal.App.5th 924, 958.) This includes the requirement of an objection to preserve the claim for review. (*Id.* at p. 959.)

Defendant acknowledges he did not object to the asserted misconduct, but nevertheless argues "the misconduct is reviewable because the prejudice could not have been cured by admonition." We disagree.

As defendant accurately observes, he struggled to control himself during trial, interrupting the attorneys and the trial court on numerous occasions. Ultimately, the trial court removed defendant from the courtroom. During closing argument, the prosecutor

argued defendant was "used to getting his way," pointing out that he "spoke over" her and "refused to answer a lot of [her] questions" during cross-examination, "oftentimes causing His Honor to get involved." The prosecutor argued "the same exact story" occurred in the back of the patrol car when defendant was talking to Hurt: "When things didn't go his way, when [Hurt] wouldn't take all of the blame, he got mad." Hurt's counsel made a similar argument: "[H]e gets his way through bullying people, through his aggressiveness, and I think that came out when he was on the stand. [¶] He didn't like what the Court was doing. He took it out on the Court. He didn't like what [the prosecutor] was doing. He took it out on her. He didn't like what his attorney was doing. He got aggressive with him. He did the same thing with Ms. Hurt, and he's still mad at her."

"A defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. [Citations.] In addition, failure to request the jury be admonished does not forfeit the issue for appeal if ' "an admonition would not have cured the harm caused by the misconduct." ' [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 820.) Here, however, a timely objection and request for admonition would not have been futile. To the extent the foregoing arguments improperly suggested the jury should draw conclusions about defendant's character based on his demeanor and apply those conclusions to the case, as defendant argues on appeal, any prejudice flowing from the claimed misconduct could have been cured by admonition.

Hurt's counsel also argued: "[Defendant's] constant theme is it's Ms. Hurt's gun. It's hers, because he's mad at her. He's so upset and so focused on getting even with her for leaving him—" Defendant interrupted: "Oh, God." Hurt's counsel continued: "—that he was arrested for kidnapping her. For a variety of reasons, the [District Attorney's] office sometimes dismisses cases that maybe should have gone somewhere else. We're not here to judge that. It did result in his arrest for kidnapping." To the

21

extent that line of argument improperly suggested the kidnapping charges were only dismissed because they were filed in the wrong venue, as defendant argues on appeal, we conclude any prejudice flowing from the claimed misconduct could have been cured by admonition.

Accordingly, defendant's claims of misconduct are forfeited.

B

Anticipating forfeiture, defendant argues in the alternative that his defense counsel provided constitutionally deficient assistance by failing to object. His contention fails because he has not established prejudice.

A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel was ineffective, but such a claim is generally more appropriately addressed on habeas corpus, which allows for an evidentiary hearing where the reasons for defense counsel's actions or omissions can be explored. (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) Where the record on appeal is sufficient to establish deficient performance, in order for defendant's ineffective assistance claim to succeed, he must also demonstrate a reasonable probability of a more favorable outcome had counsel objected. (*Ibid*.) And because " ' "[t]he object of an ineffectiveness claim is not to grade counsel's performance" ' [citation], where ' "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." ' [Citations.]" (*People v. Gana* (2015) 236 Cal.App.4th 598, 612-613.)

Here, even if the challenged arguments were improper and defense counsel's failure to object fell below an objective standard of reasonableness, there is no reasonable probability of a more favorable outcome had such objections been made. The evidence against defendant was very strong. He was seated in a car with a backpack containing 84 grams of methamphetamine, $1,400 in cash, and a loaded ghost gun. The car also contained two digital scales. While the backpack belonged to Hurt, defendant admitted

to being a drug dealer and to selling drugs earlier in the day. Although he testified that he had no idea the backpack contained the gun or methamphetamine, the assertion was undercut by defendant's conversation with Hurt in the back of the patrol car, in which Hurt asked defendant: "You really put that shit in my backpack?" Defendant responded: "Shut up, shut up. Listen I didn't mean to. Okay?" Defendant also had a photo on his cell phone of the same type of gun that was found in Hurt's backpack. A text message was also sent from defendant's cell phone informing someone that he still had "a gun and pound in the car." This message was sent two days before defendant was found in a car with a gun and considerable amount of methamphetamine. The contents of defendant's motel room and the facts of defendant's prior conviction for possession of narcotics for sale also provided strong evidence that he was aware of the presence of both the gun and the methamphetamine in Hurt's backpack and possessed that methamphetamine for purposes of sale.

In light of the strength of the case against defendant, we are not persuaded by defendant's argument that "[w]ithout [the challenged arguments from the prosecutor and Hurt's counsel], there is a reasonable probability that at least one juror would have believed [he] did not know about either the drugs or the gun in [the backpack]." Proper or not, the challenged comments from the prosecutor and Hurt's counsel did not go directly to defendant's knowledge of either the gun or the methamphetamine. Instead, they went to explain why defendant would have wanted to blame Hurt, i.e., because he was used to getting his way and he was mad at Hurt for accusing him of kidnapping her. Defendant's knowledge of the presence of both the methamphetamine and the gun was established by, among other evidence, defendant's own words.

C

In connection with his misconduct claims, defendant argues the trial court prejudicially abused its discretion and violated his constitutional rights by allowing the admission of his kidnapping arrest for purposes of impeachment. The entirety of this

23

argument spans three sentences in the opening brief. We conclude it is forfeited for failure to adequately brief the issue. (Rule 8.204(a)(1)(B); *Badie, supra*, 67 Cal.App.4th at pp. 784-785.)

## VII

Defendant also claims the trial court prejudicially erred by telling the jury that defendant was the only person it had ever removed from the courtroom. This claim is forfeited, and defendant's alternative assertion of ineffective assistance of counsel fails for lack of prejudice.

## A

Defendant was particularly disruptive during closing arguments. After defendant interrupted Hurt's counsel during his argument, the trial court had the jury step outside the courtroom. As they were leaving, defendant stated: "You can take me out of here if you want. I'm not tripping." Outside the presence of the jury, the trial court informed defendant that he was going to be removed from the courtroom. Defendant responded: "I'm fine with that." The trial court then explained that it would "not have [Hurt's] case or her attorney's argument disrupted and commented on by [defendant]" and stated that defendant would be "out of here" as soon as arrangements could be made for him to view the remaining proceedings from a different courtroom. Defendant responded: "Thank God."

After defendant was removed, the jury returned to the courtroom, and the trial court provided them with the following explanation: "Ladies and gentlemen, I have removed Mr. Torrez from the courtroom. You certainly have been aware of the situation we've had with him, but I want to explain to you that he can be as disruptive as he wants in his own case. When it comes, though, to impinging on Ms. Hurt's right to a fair trial, particularly, but also on the district attorney's right to a fair trial, then I'm going to warn, I'm going to cajole, I'm going to try to explain, and when all of those have failed, as they have here, I removed Mr. Torrez from this courtroom so as to prevent that impingement

24

on the rights of the other parties here." The trial court then explained that defendant was in a different courtroom viewing the proceedings remotely and added: "I've never done this before, but I found that it's necessary in this case."

The bailiff then notified the trial court that a spectator was also being disruptive because she was "unhappy with the decisions here." The trial court removed the spectator when she interrupted the court during its explanation that spectators would also be removed for disruptive behavior. After removing the spectator, the trial court stated: "Anybody else want a piece of me? I shouldn't joke. This is serious. I guess I have not done this before, but it's serious. I will not abide somebody's right to a fair trial being interfered with."

B

Defendant's judicial misconduct claim is forfeited. "As a general rule, a specific and timely objection to judicial misconduct is required to preserve the claim for appellate review." (*Seumanu, supra*, 61 Cal.4th at p. 1320.) Defendant acknowledges the failure to object, but asserts any such objection would have been futile because "[t]he court could not admonish itself." But the relevant question is not whether the trial court could admonish itself, but rather whether the record demonstrates that the trial court would not have admonished *the jury* to disregard the comments claimed to have been improper. "[T]he circumstances in no way suggest an objection and request to have the jury admonished would have found an unsympathetic jurist." (*Ibid*.) We conclude any prejudice flowing from this claimed misconduct could have been cured by such an admonition.

Defendant's alternative assertion of ineffective assistance of counsel also fails. As with defendant's previous ineffective assistance claims, we resolve this claim under the second prong of the analysis without determining whether defense counsel's failure to object fell below an objective standard of reasonableness.

25

As the California Supreme Court has explained, the role of an appellate court in assessing prejudice flowing from asserted judicial misconduct " ' "is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial." ' " (*People v. Abel* (2012) 53 Cal.4th 891, 914.) That standard has not been met. The case against defendant was very strong. Defendant also concedes that "removing [him] was proper." Thus, to the extent defendant argues "the trial court's comments played into the [prosecution's] narrative that [defendant] wanted Ms. Hurt to take all the blame," it was defendant's conduct that played into this narrative far more than the trial court's comments. However, even if we were to accept that these comments "might suggest [the trial court] has allied itself with the prosecution" (*Seumanu, supra*, 61 Cal.4th at p. 1320), in light of the strength of the case against defendant and the fleeting nature of the challenged comments, we conclude there is no reasonable probability of a more favorable outcome had defense counsel objected to the asserted misconduct.

## VIII

Moreover, defendant asserts the cumulative prejudice flowing from the foregoing claims of error requires reversal. Having found no merit in defendant's assertions of error, there is no cumulative prejudice to assess.

## IX

Defendant also claims the trial court committed two sentencing errors. He contends the trial imposed a longer prison term because he elected to go to trial, and failed to exercise its discretion under Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill 518) to decide which sentence to stay under Penal Code section 654.

Prior to sentencing, the trial court found that defendant was previously convicted of robbery in 2004, a strike offense. The trial court also found several aggravating

26

circumstances to be true, including, that the crime involved a large quantity of contraband (rule 4.421(a)(10)), defendant served a prior prison term (rule 4.421(b)(3)), defendant was on probation, mandatory supervision, PRCS, or parole when the crime was committed (rule 4.421(b)(4)), and defendant's prior performance on probation, mandatory supervision, PRCS, or parole was unsatisfactory (rule 4.421(b)(5)).

Based on the aggravating circumstances, the trial court sentenced defendant to an upper term of four years for possession of methamphetamine while armed with a loaded and operable firearm (count three), doubled to eight years because of the prior strike. The trial court also imposed three-year upper term sentences for possession of a firearm by a convicted felon (count one) and possession of methamphetamine for sale (count two), doubled to six years because of the prior strike. The trial court then stayed execution of those sentences under Penal Code section 654.

Defendant argues the trial court violated his constitutional rights by sentencing him to a longer prison term because he elected to go to trial. "Although a court may not impose a harsher sentence on a defendant as punishment for exercising his or her jury trial right, '[t]here must be some showing, properly before the appellate court, that the higher sentence was imposed as punishment for exercise of the right.' [Citation.]" (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 762, disapproved of on another point by *People v. Bryant* (2021) 11 Cal.5th 976, 986, fn. 5.) " 'The mere fact . . . that following trial defendant received a more severe sentence than he was offered during plea negotiations does not in itself support the inference that he was penalized for exercising his constitutional rights.' [Citation.]" (*Ghebretensae,* at p. 762.)

Here, the trial court relied on several aggravating circumstances to impose an upper term sentence of four years, doubled to eight years because of the prior strike. While defendant points out there was one mitigating circumstance, and while he considers the aggravating circumstances relied on by the trial court to be relatively minimal, the trial court was within its discretion in imposing an upper term.

" 'Sentencing courts have wide discretion in weighing aggravating and mitigating factors [citations], and may balance them against each other in qualitative as well as quantitative terms.' [Citation.] One factor alone may warrant imposition of the upper term [citation] and the trial court need not state reasons for minimizing or disregarding circumstances in mitigation [citation]." (*People v. Lamb* (1988) 206 Cal.App.3d 397, 401.)

Defendant nevertheless points to the following exchange between the trial court and defendant on the second day of trial, after defense counsel informed the trial court that defendant wanted to take the four-year plea deal that was previously offered by the prosecution. The trial court responded: "It's not on the table." Defendant asked: "Why not?" The trial court answered: "Because we're at trial and this is the end of the trail." Defendant highlights the word "because" and argues this exchange gives "rise to an inference that the court imposed a sentence twice the length of the plea offer because [defendant] chose to go to trial." We disagree. As explained earlier in this opinion, the trial court's statement merely informed defendant that the plea offer expired before trial, so it could not be accepted by defendant on the second day of trial. "Because we're at trial" simply meant "because the offer was no longer on the table." Indeed, that was the first thing the trial court said to defendant: "It's not on the table." The record does not support a conclusion that the trial court imposed a harsher sentence as punishment for defendant electing to go to trial.

Defendant also contends the trial court failed to exercise its discretion under Assembly Bill 518 to decide which sentence to stay under Penal Code section 654.

Effective January 1, 2022, Assembly Bill 518 "amended Penal Code section 654, subdivision (a) to provide, in pertinent part: 'An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision.' Previously, where Penal Code section 654 applied, the sentencing court was required to impose the sentence that 'provides for the longest potential term of

28

imprisonment' and stay execution of the other term. [Citation.] As amended by Assembly Bill 518, Penal Code section 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

Defendant was sentenced in August 2022, seven months after Assembly Bill 518's effective date. However, defense counsel did not object to the trial court's decision to stay execution of the shorter terms imposed for counts one and two, as opposed to the longer term imposed for count 3. Defendant's failure to object forfeits the contention on appeal. While a claim that the trial court imposed an unauthorized sentence by failing to stay a sentence under Penal Code section 654 may be raised for the first time on appeal (*People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17), here, defendant does not claim his sentence was unauthorized. Instead, he claims the trial court was unaware of its new discretion to choose which sentence to stay. Such claims are forfeited for failure to object at the sentencing hearing. (*Id*. at p. 353 [forfeiture applies to "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"].)

In any event, absent evidence to the contrary, we presume the trial court knew the law and followed it. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.) We therefore presume the trial court applied the amended version of Penal Code section 654 unless the trial court's purported misunderstanding with respect to its sentencing discretion "is affirmatively demonstrated by the record." (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1026.) Defendant does not point this court to any affirmative indication in the record that the trial court was unaware of its discretion to stay execution of either the longer or the shorter term of imprisonment. Instead, defendant argues the trial court did not expressly "acknowledge that it could choose the counts to be stayed." However, the absence of an affirmative acknowledgement that the trial court was applying the

amended version of Penal Code section 654 does not affirmatively demonstrate that it was applying the superseded version of the statute.

DISPOSITION

The judgment is affirmed.


_____/S/_____<br>
MAURO, J.

We concur:


_____/S/_____<br>
HULL, Acting P. J.


_____/S/_____<br>
KRAUSE, J.